UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOHN R. VALLEE, JR.                              CIVIL ACTION

VERSUS

GERRY LANE HUMMER-SAAB, LLC              NO.: 10-00765-BAJ-SCR

RULING AND ORDER

Before the Court is **Defendant's Motion for Summary Judgment (Doc. 14)**,

filed by Defendant Gerry Lane Hummer-Saab, LLC ("Gerry Lane"), seeking an order

from this Court dismissing Plaintiff John R. Vallee, Jr.'s ("Vallee") employment

discrimination claims.[1]   Vallee opposes the motion.[2]   (Docs. 22, 23.)   Gerry Lane

filed a memorandum in response to Vallee's memorandum in opposition.  (Doc. 26.)

Oral argument is not necessary.  The Court has jurisdiction pursuant to 28 U.S.C.

§ 1331.

Also before the Court is **Plaintiff John R. Vallee, Jr.'s Motion for Partial**

---

[1]In support of its Motion for Summary Judgment, Gerry Lane relies upon the pleadings; a Statement of Undisputed Facts; Vallee's EEOC Charge of Discrimination; a sworn declaration by Terry Bell, former General Manager of the Gerry Lane Hummer-Saab dealership; a sworn declaration by Henry Beard, Vallee's former direct supervisor; excerpts from Vallee's deposition testimony; a signed and dated copy of Gerry Lane's Sales Personnel Pay Plan; and copy of Gerry Lane's Master Sales Sheet for the year 2008.

[2]In support of his memorandum in opposition, Vallee replies upon the pleadings; his response to Gerry Lane's Statement of Undisputed Facts; excerpts from his deposition testimony; excerpts from Terry Bell's deposition testimony; excerpts from Gerry Lane's Rule 30(b)(6) deposition; a copy of Gerry Lane's response to his unemployment benefits application; copies of his Sales Commission Reports; his EEOC Charge of Discrimination; a document entitled, "Transfer Inquiry from LWC"; a Sales Employees demographic chart; and his Separation Notice from Gerry Lane.  Vallee also filed his own Statement of Undisputed Facts. See Doc. 22-1.  However, because Local Rule 56.1 does not permit such, Valle's Statement of Undisputed Facts will not be considered by this Court.

**Summary Judgment (Doc. 15)**, filed by Vallee, seeking an order from this Court denying Gerry Lane's request for attorneys' fees and costs.[3] See Doc. 3, *Affirmative Defenses*, ¶ 7. Gerry Lane opposes Vallee's motion.[4] (Doc. 19.) Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. Background[5]

This is an employment discrimination action brought by Vallee against his former employer, Gerry Lane.[6] Vallee alleges that he was subjected to discrimination on the basis of his race, in violation of Title VII of the Civil rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), and on the basis of his age, in violation the Age Discrimination Employment Act, 29 U.S.C. §621, et seq. ("ADEA").[7]

Vallee began his employment with Gerry Lane in May 2008. In July 2008, he transferred from a Gerry Lane Saturn dealership to the Gerry Lane Hummer-Saab

---

[3]In support of his Motion for Partial Summary Judgment, Vallee relies upon the pleadings and his Statement of Undisputed Facts.

[4]In support of its memorandum in opposition, Gerry Lane relies upon the pleadings, excerpts from Vallee's deposition testimony, and its response to Vallee's Statement of Undisputed Facts.

[5]Pursuant to Local Rule 56.1, Gerry Lane submitted a Statement of Undisputed Facts in support of its Motion for Summary Judgment. (Doc. 14-1). Vallee, however, denies or contests some of those facts, as permitted under Local Rule 56.2. (Doc. 23.) Therefore, pursuant to Local Rule 56.2, only certain material facts will be deemed admitted for purposes of this ruling and order.

[6]On August 31, 2009, Vallee filed a Charge of Discrimination with the Louisiana Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC"), in which he alleged Gerry Lane subjected him to harassment and discrimination based on his age and race. (Doc. 14-3.) In September 2010, Vallee filed suit in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana. (Doc. 1-2.) This matter was removed from the 19th JDC to this Court on November 11, 2010. (Doc. 1.)

[7]According to Vallee's Charge of Discrimination, he is a white male. (Doc. 14-3, p.1.) It is not clear from Vallee's complaint how old he was when he began his employment with Gerry Lane, nor is it clear how old he was when he was terminated on December 9, 2009. However, his Charge of Discrimination reflects that he was fifty-five years old as of August 31, 2009. *Id.*

2

dealership. The parties dispute whether Vallee was brought on at the Hummer-Saab dealership as an Internet Sales Consultant or the Internet Sales Manager. The parties agree, however, that Vallee was responsible for internet sales during his tenure at the Hummer-Saab dealership.

Initially, Vallee reported to the sales manager, Danny Robichaux ("Robichaux") (32-year-old, white male), who reported to the general sales manager, Ron Davis ("Davis") (50-year-old, white male). In October 2008, Davis was replaced by Henry Beard ("Beard") (37-year-old, African-American male). Davis, and then Beard, reported to the general manager, Terry Bell ("Bell") (63-year-old, white male), who reported directly to the dealership owner.

Vallee alleges Gerry Lane violated Title VII and the ADEA when it permitted employees to harass him and when it terminated him on the basis of his race and age. Specifically, Vallee alleges that Gerry Lane employees told him that "a monkey could do his job" and referred to him as an "ass," "old school" or an "old school fart," a "redneck," and a "honky" or a "white honky." Vallee also alleges that he reported such comments to dealership management, but that no remedial action was taken. Vallee further alleges Gerry Lane refused to recognize him as a manager, prevented him from operating as a manager, excluded him from manager meetings, and refused to provide him with a Hummer demonstrator vehicle and a private office, despite providing both to other supervisory employees. Valle also contends that Gerry Lane denied his requests for additional training, computer equipment, software

3

programs, and high-speed internet.    Finally, Vallee alleges that Gerry Lane wrongfully terminated him.    Vallee seeks damages, including punitive damages, costs and attorney's fees.  Gerry Lane denies all liability.

As to the instant Motion for Summary Judgment, Gerry Lane argues that Vallee was terminated due to his poor sales performance and his refusal to work with dealership management.  It contends that there is no issue of material fact as to whether it terminated Vallee because of his race and age.  It also contends that the evidence in the record does not establish that it permitted employees to unlawfully harass Vallee.

Vallee opposes Gerry Lane's Motion for Summary Judgment and argues that there is sufficient evidence in the record to establish an issue of material fact as to whether Gerry Lane terminated him on the basis of his race and age.  Vallee further argues that the record is replete with evidence of unlawful harassment of him by Gerry Lane employees.

In support of his Motion for Partial Summary Judgment, Vallee argues there is no genuine issue of material fact as to whether Gerry Lane is entitled to attorney's fees and costs because Gerry Lane has not produced any evidence to support this contention.

Gerry Lane opposes Vallee's Motion for Partial Summary Judgment and argues that the issue of attorney's fees should not be considered by the Court at this stage of the litigation.  Thus, Vallee's motion should be denied as premature.

4

## II.    Standard of Review

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* at 248-49. In order to grant a motion for summary judgment, the court must be satisfied "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The moving party bears the burden of establishing that there are no genuine issues of material fact. However, if the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The

nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

In an employment discrimination case, the Court must "focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 447-48 (5th Cir. 1996). The Court "must draw all reasonable inferences in favor of the nonmoving party, and [the Court] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, Inc. 530 U.S. 133, 150 (2000). However, the nonmovant's burden in a summary judgment motion is not satisfied by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Liquid Air Corp.*, 37 F.3d at 1075. Instead, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

## III.   Analysis

### A.   Vallee's Title VII Claims

Title VII prohibits an employer from failing or refusing to hire, or discharging, or otherwise discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The evidentiary

6

framework for analysis of disparate treatment claims[8] was established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The first step of the *McDonnell Douglas* burden-shifting analysis requires "[t]he plaintiff [to] establish a *prima facie* case that the defendant made an employment decision that was motivated by a protected factor." *Turner v. Kansas City Southern Railway Co.*, 675 F.3d 887, 892 (5th Cir. 2012) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir.1995)). If the plaintiff establishes a *prima facie* case, we proceed to the next stage of the analysis, where "the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason." *Id.* (citing *Mayberry*, 55 F.3d at 1089). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 342. If the defendant meets its burden of production, the burden shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination." *Turner*, 675 F.3d at 892 (citing *Mayberry*, 55 F.3d at 1089).

In light of the Supreme Court's opinion in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the Fifth Circuit has adopted a modified-*McDonnell Douglas* test. The modification applies to the third step of the *McDonnell Douglas* analysis if, like here, the plaintiff relies on circumstantial evidence to prove discrimination. Under

---

[8]Here, Vallee's complaint alleges disparate treatment only; that is, how he was treated compared to other employees outside of his protected class. His complaint does not allege disparate-impact, i.e., that Gerry Lane's facially neutral employment policies have an adverse impact on a protected class.

the modification, after the plaintiff has put forth a *prima facie* case of discrimination and after the defendant has articulated a legitimate nondiscriminatory reason, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either: (1) that the defendant's reason is not true, but rather is a pretext for discrimination (pretext alternative); or (2) that the defendant's reason while true is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative).[9] *Rico-Sanz v. Louisiana*, No. 04-693-JJB-DLD, 2006 U.S. Dist. LEXIS 95686, at *6-7 (M.D. La. Oct. 23, 2006) (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005)).

Although the *McDonnell Douglas* burden-shifting analysis is utilized for both Title VII and ADEA claims, the Court applies a "motivating factor" standard in analyzing race discrimination claims. Therefore, in order to survive a motion for summary judgment, the plaintiff must rebut each of the nondiscriminatory reasons with sufficient evidence to permit a jury to find that race was a "motivating factor" in the employment decision. 42 U.S.C. § 2000e-2(m).

### 1.   Valle's Non-Termination Claim Under Title VII

To establish a *prima facie* case of discrimination based on race, the plaintiff must show that: (1) he was a member of a protected class; (2) he was qualified for the position held; (3) he was subject to adverse employment action; and (4) he was

---

[9]The modified framework is often discussed in context of ADEA cases; however, it is also applicable to Title VII. *Rico-Sanz*, 2006 U.S. Dist. LEXIS 95686, at *6-7.

8

treated differently than others similarly-situated. *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001).

In support of its motion, Gerry Lane argues that Vallee has not satisfied the third and forth prongs of the *prima facie* case.  Specifically, Gerry Lane contends that Vallee cannot show that he was subjected to an adverse employment action and/or that he was treated differently than similarly situated co-workers.

In opposition, Vallee argues that "it is clear that [he] was subject to multiple adverse employment actions." (Doc. 22, p. 13.)  Specifically, he contends that Gerry Lane's refusals to provide him with a Hummer demonstrator vehicle, a private office, certain computer equipment, including high speed internet, and additional training constitute adverse employment actions.   He further contends that there is overwhelming evidence that he was treated less favorably than other similarly situated employees outside of his protected class. *Id.*

Under Title VII, an adverse employment action must be an "ultimate employment decision," such as "hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). Further, Title VII does not cover "every decision made by employers that arguably might have some tangential effect upon these ultimate decisions." *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (quoting *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875,878 (5th Cir. 1999)).

Gerry Lane's purported refusal to provide Vallee with a Hummer demonstrator vehicle, a private office, certain computer equipment, including high speed internet, and additional training do not constitute adverse employment actions because they are not the equivalent of ultimate employment decisions.  Indeed, Vallee has failed to cite, and the Court is unable to identify, any case law to support his assertion that the acts outlined above constitute adverse employment actions.  Thus, Vallee has failed to establish a *prima facie* case, and his non-termination claim under Title VII must be dismissed.

## 2.    Vallee's Wrongful Termination Claim Under Title VII

To establish a *prima facie* case of wrongful termination based on race, the plaintiff must show that: (1) he was a member of a protected class; (2) he was qualified for the position held; (3) he was subject to adverse employment action; and (4) he was replaced by someone outside the protected class, other similarly-situated employees were treated more favorably, or he was otherwise discharged because of his race.  *Lee v. Kansas City So. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009); *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

Here, Gerry Lane does not contest that Vallee has established a *prima facie* case of wrongful termination.  Thus, the burden shifts to Gerry Lane to produce evidence that its decision to terminate Vallee was based on a legitimate nondiscriminatory reason.

Gerry Lane contends that Vallee was terminated for his poor sales performance and his refusal to follow dealership procedures and/or work with dealership management. In support of its position, Gerry Lane points the Court to evidence, including Vallee's own deposition testimony, to establish Vallee's low sales performance and that he was counseled by management after refusing to follow dealership procedures.

Once the employer has met its burden of production, the plaintiff's burden of persuasion then arises. *Bodenheimer v. PPG Industries,* 5 F.3d 955, 957 (5th Cir. 1993). Thus, the burden shifts to Vallee to point the Court to sufficient evidence to create a genuine issue of material fact that Gerry Lane's reasons are not true, but rather are pretext for discrimination; or that the defendant's reasons, while true, are only two of the reasons for its conduct, and another motivating factor was his race.

### a.  Vallee's Sales Performance and Alleged Refusal to Follow Dealership Procedures and/or Work with Dealership Management

Accordingly to Vallee, Gerry Lane's sales figures are inaccurate, and thus, evidence of pretext. In support of his position, Vallee points to the discrepancies between the "Master Sales Sheet" submitted by Gerry Lane (Doc. 14-8), and the "Hummer Sales Commission Report" submitted by him (Doc. 22-6). Accordingly to Vallee, he sold approximately five (5) more vehicles than reported on Gerry Lane's "Master Sales Sheet." Vallee concedes, however, that he received a poor sales performance review two months before he was terminated. However, he contends

11

that at least one sales consultant sold fewer vehicles than him during his tenure at the Hummer-Saab dealership.   However, Gerry Lane did not terminate that employee.  Thus, Gerry Lane's stated reasons are mere pretext.

In response, Gerry Lane argues that Vallee was not terminated for missing a specific sales number.  Rather, he was terminated, in part, because his overall sales were too low.  In support of its position, Gerry Lane points to Beard's and Bell's declarations, in which they state that Vallee was counseled on the need to bring more people into the dealership and sell more cars, and that he was eventually terminated due to his poor sales.  (Docs. 14-4, 14-7.)

It is well established that employment discrimination statutes are "not intended to be a vehicle for judicial second-guessing of employment decisions, nor [are they] intended to transform the courts into personnel managers."  *Bienkowski v. Am. Airlines*, 851 F.2d 1503, 1507-08 (5th Cir. 1958).  Thus, it is improper for this Court to put itself in the position of Gerry Lane, and second-guess its sales employee requirements or the manner in which it calculates each employees' vehicles sold.

As it relates to his refusal to follow dealership procedures and/or work with dealership management, Vallee concedes in his memorandum in opposition, that at the time of his termination, Beard advised him that he was being terminated due to "personality problems" between Vallee and Beard.  (Doc. 22, p. 5.)  Vallee argues, however, that there is no record of him ever being disciplined for violating Gerry Lane's rules, policies, and procedures.  He further contends that he always "turned

12

over" customers, as required by Gerry Lane, and that any disputes with management were the result of his unwillingness to provide false or misleading information to customers, and not his failure to follow dealership procedures.

In response, Gerry Lane paints a much different picture of Vallee. According to Gerry Lane, Vallee frequently made decisions that were contrary to company policy. For example, Gerry Lane contends that after approximately three months, Vallee unilaterally decided to provide pricing and interest rate information to potential customers via the internet or telephone, rather than in person. Gerry Lane also contends that it moved Vallee out his private office and into a cubicle because it could not trust him to follow dealership sales procedures. In support of its position, Gerry Lane points to Vallee's own deposition testimony, in which he testified that he was "criticized" by Beard, more than once, for not following dealership procedures (Doc. 14-5, pp. 21-23) and conceded that most of the "escalations" with management occurred as a result of "ethics or policies" disagreements (Doc. 14-5, p. 31).

As mentioned above, Title VII was not intended to transform the courts into personnel managers. Thus, it is improper for this Court to put itself in the position of Gerry Lane, and second-guess its sales procedures or employee requirements. Further, Vallee concedes that he was counseled multiple times for his failure to follow dealership procedures.

Again, the issue is not whether Gerry Lane made an error in terminating Vallee, but whether Vallee's termination was prompted by discriminatory animus. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (stating that "the question is not whether an employer made an erroneous decision; it is whether the decision was made with a discriminatory motive"); *see also Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (holding that "Title VII does not protect against unfair business decisions, only against decisions motivated by unlawful animus").

In support of his position that his termination was prompted by discriminatory animus Vallee points the Court to Beard's comments. Vallee contends that during the two months in which Beard supervised him, Beard repeatedly called Vallee a "white honky." In support of his position, Vallee points to his own deposition, during which he testified that during a meeting "just before [his] termination" Beard called him an "asshole" and a "white honky." (Doc. 22-2, pp. 41-42.) He further testified that during the two months in which Beard supervised Vallee, Beard called Vallee a "honky" at least three or four times. (Doc. 22, p. 43.) According to Vallee, he complained about Beard's comments to Robichaux, but no remedial action was taken. (Doc. 22-2, pp. 45-46.)

In response, Gerry Lane contends Beard never called Vallee a "white honky." (Doc. 14-7, p. 2.) It further contests that even if Beard did call Vallee a "honky" three

or four times over the course of his employment, such comments were stray remarks that are not probative of discriminatory intent.

Discriminatory remarks may be taken in account "even where the comment is not the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577-78 (5th Cir. 2003) (per curiam). Here, Beard's comments were allegedly made before Vallee's termination. On the other hand, the decision to terminate Vallee was made by Beard and approved by Bell. (Doc. 14-4, p. 3.) However, even assuming Beard's comments were related to Vallee's termination, this sole piece of evidence is insufficient to create a genuine issue of material fact. *See Palasota*, 342 F.3d at 577) (stating that a comment is not evidence of discrimination if it is the sole proof of pretext).

Although Vallee may sincerely believe that his termination was discriminatory, the Fifth Circuit has explained that "a subjective belief of discrimination, however genuine [may not] be the basis of judicial belief." *Lawrence v. Univ. of Texas Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999). Here, Vallee has failed to point the Court to sufficient evidence to establish that the reasons offered by Gerry Lane for its decision to terminate him are mere pretext for discrimination on the basis of his race. Accordingly, Vallee's wrongful termination claim under Title VII must be dismissed.

### 3.    Vallee's Hostile Work Environment Claim Under Title VII

To establish a hostile work environment claim under Title VII the plaintiff must demonstrate that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001)).   For harassment on the basis of race to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 268 (quoting *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993)).  For a work environment to be deemed sufficiently hostile, the Court considers relevant circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (quoting *Harris*, 510 U.S. at 23).

According to Vallee, Beard's comments along with Gerry Lane's refusal to provide him with a Hummer demonstrator vehicle, a private office, certain computer

16

equipment, including high speed internet, and additional training constituted harassment.   In support of his position, Vallee points to the same deposition testimony mentioned above.

In support of its motion, Gerry Lane argues that such comments and actions are not "severe or pervasive" enough to alter the terms, conditions, or privileges of Vallee's employment and create a hostile work environment.   Thus, there is no genuine issue of material fact as to Vallee's hostile work environment claim, and his claim must be dismissed as a matter of law.

As an initial matter, the Court finds that Beard's alleged comments were not "severe or pervasive" enough to alter the terms, conditions, or privileges of Vallee's employment and create a hostile work environment.   According to Vallee, Beard's comments occurred three or four times over a two-month period.   Further, Vallee does not assert that Beard's comments were physically threatening, nor did he point the Court to evidence in the record to demonstrate that Beard's comments unreasonable interfered with his work performance. *Compare Cavalier v. Clearlake Rehabilitation Hospital, Inc.*, 306 Fed. Appx. 104 (5th 2009) (evidence that a supervisor called her fellow supervisor a "boy" several times and told him that she would "beat the tar off of him" did not support a finding of a hostile work environment); *and Baker v. FedEx Ground Package System, Inc.*, 278 Fed. Appx. 322, 329 (5th Cir. 2008) (comments by a white supervisor to her African-American employee that "she did not want to work with people like that" and that "whites rule"

17

and "that this should be a lesson, Blacks cannot report Whites" were not sufficiently severe to create a hostile work environment); *with Walker v. Thompson,* 214 F.3d 615, 619-922 (5th Cir. 2000) (plaintiff's hostile work environment claim survived summary judgment where evidence demonstrated years of inflammatory racial epithets, including "nigger" and "little black monkey").

Further, although the parties dispute whether Vallee was an Internet Sales Manager, and thus, whether he was entitled to a private office and a more expensive demonstrator vehicle, it is undisputed that Vallee was given a Saab demonstrator vehicle for his personal, full-time use.  It is also undisputed that Vallee was allowed to use a Hummer demonstrator vehicle while at work.  According to Gerry Lane, it moved Vallee out his private office and into a cubicle because it could not trust him to follow dealership sales procedures.  In support of its position, Gerry Lane points to Vallee's own deposition testimony, in which he testified that he was "criticized" by Beard, more than once, for not following dealership procedures. (Doc. 14-5, pp. 21-23.)  Additionally, Vallee has failed to point to specific evidence in the record to demonstrate that Gerry Lane's alleged refusal to provide him with a Hummer demonstrator vehicle or a private office unreasonably interfered with his work performance.

It is also undisputed that within a month of being employed by Gerry Lane, Vallee received training and passed his internet sales certification exam. (Doc. 14-5, pp. 39-40.)  Subsequently, Vallee received additional training on Gerry Lane's

products, and had access to all of Gerry Lane's training videos and information. (Doc. 14-5, pp. 40-41.)  Although Vallee contends that he was subsequently denied additional training and certain computer equipment, he has failed to point to specific evidence in the record to demonstrate that Gerry Lane's refusal to provide him with additional training and certain computer equipment unreasonably interfered with his work performance.

In summary, the Court finds that Vallee has failed to point the Court to sufficient evidence in the record to demonstrate that there is a genuine issue of material fact as to his hostile work environment claim under Title VII.  Thus, this claim must be dismissed.

### B.    Vallee's ADEA Claims

Under the ADEA, "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C. § 623(a)(1).   "A plaintiff can demonstrate age discrimination in two ways, either through: direct evidence or by an indirect or inferential [circumstantial] method of proof." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).  A plaintiff relying on circumstantial evidence must put forth a *prima facie* case, at which point the burden shifts to the employer to provide

a legitimate, nondiscriminatory reason for the employment decision. *Willis v. Coca-Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006).[10]

Although the *McDonnell Douglas* burden-shifting analysis is utilized for both Title VII and ADEA claims, the Court applies a "but-for" standard in analyzing age discrimination cases. Therefore, in order to survive a motion for summary judgment the plaintiff must rebut each of the nondiscriminatory reasons with sufficient evidence to permit a jury to find that age was the "but-for" reason for the defendant's decision to terminate plaintiff. *Cramer v. NEC Corp. of Am.*, No. 12-10236, 2012 U.S. App. LEXIS 23316, at \*12 (5th Cir. Nov. 13, 2012) (citing *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir.2010) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009))).

## 1.    Valle's Non-Termination Claim Under the ADEA

To establish a *prima facie* case of discrimination based on age under the ADEA, plaintiff must establish that: (1) he is forty or older; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) he was replaced by someone younger or treated less favorably than a similarly situated younger employee. *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003).

---

[10]If a plaintiff produces direct evidence of discrimination, no further showing is required, and the burden shifts to the employer. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121-22 (1985). Here, Vallee does not present direct evidence of discrimination. Therefore, the Court must apply the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Turner v. Kansas City Southern Railway Co.*, 675 F.3d 887 (5th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

According to Vallee, Gerry Lane's refusals to provide him with a Hummer demonstrator vehicle, a private office, certain computer equipment, including high speed internet, and additional training were discriminatory. However, for the reasons explained above, the Court finds that Vallee has failed to establish that such acts constitute adverse employment actions. Thus, he has failed to establish a *prima facie* case, and his non-termination claim under the ADEA must be dismissed.

## 2.     Vallee's Wrongful Termination Claim Under the ADEA

To establish a *prima facie* case of wrongful termination based on age, the plaintiff must show that he was: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. *Rachid*, 376 F.3d at 309 (internal quotations and citations omitted); *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575-76 (5th Cir. 2003).

Here, Gerry Lane does not contest that Vallee has established a *prima facie* case of wrongful termination. Thus, the burden shifts to Gerry Lane to produce evidence that its decision to terminate Vallee was based on a legitimate nondiscriminatory reason.

Gerry Lane contends that Vallee was terminated for his poor sales performance and his refusal to follow dealership procedures and/or work with dealership management. In support of its position, Gerry Lane points the Court to

21

evidence, including Vallee's own deposition testimony, to establish Vallee's low sales performance and that he was counseled by management after refusing to follow dealership procedures.

Thus, the burden shifts to Vallee to point the Court to sufficient evidence to create a genuine issue of material fact that Gerry Lane's reasons are not true, but rather are pretext for discrimination on the basis of his age.

### a.   Vallee's Sales Performance and Alleged Refusal to Follow Dealership Procedures and/or Work with Dealership Management

To establish a disparate treatment claim, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009).  In response to Gerry Lane's contention that Vallee was terminated for his poor sales performance and his refusal to follow dealership procedures and/or work with dealership management, Vallee makes the same arguments as outlined above.  However, as explained above, the Court finds the evidence proffered by Vallee regarding his sales performance and willingness to follow dealership procedures and/or work with dealership management to be insufficient.

In support of his position that his termination was prompted by discriminatory animus Vallee points the Court to Beard's comments.  According to Vallee, Beard called him an "old fart" or "old school" a few times a month during the two months in which Beard supervised him.  (Doc. 22-2, p. 53.)  In support of his position, Vallee

22

points to his own deposition testimony, in which he testified that Beard called him an "old fart" or "old school" "[o]ne or two times a week at least." (Doc. 22-2, p. 55.)

In response, Gerry Lane contends Beard never called Vallee an "old fart" or "old school." In support of its position, Gerry Lane points to Beard's sworn declaration in which he states that he "never made any negative comments to Mr. Vallee about his age." (Doc. 14-7, p. 2.)

As explained above, even assuming Beard's comments were related to Vallee's termination, this sole piece of evidence is insufficient to create a genuine issue of material fact. *See Palasota*, 342 F.3d at 577 (stating that a comment is not evidence of discrimination if it is the sole proof of pretext). Thus, Vallee has failed to point the Court to sufficient evidence to establish that the reasons offered by Gerry Lane for its decision to terminate him are mere pretext for discrimination on the basis of his age, and his wrongful termination claim under the ADEA must be dismissed.

## 3.     Vallee's Hostile Work Environment Claim Under the ADEA

To establish a hostile work environment claim based on age discrimination under the ADEA a plaintiff must demonstrate that: (1) he was over the age of 40; (2) he was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability

on the part of the employer. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (citation omitted).

A workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Id.* (quoting *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009)). Further, the complained-of conduct must be both objectively and subjectively offensive. *Id.* (citing *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007)). "This means that not only must a plaintiff perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person. *Id.* (citing *WC&M Enters.*, 496 F.3d at 399). To determine whether conduct is objectively offensive, the totality of the circumstances must be considered, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.* (quoting *WC&M Enters.*, 496 F.3d at 399).

According to Vallee, Beard's comments along with Gerry Lane's refusal to provide him with a Hummer demonstrator vehicle, a private office, certain computer equipment, including high speed internet, and additional training constituted harassment. In support of his position, Vallee points to the same deposition testimony mentioned above.

24

However, based on the evidence proffered by Vallee, it cannot be said that such comments and actions created an abusive work environment that was permeated with discriminatory intimidation, ridicule, and insult. Indeed, Vallee has failed to point to evidence in the record to demonstrate that such comments and actions interfered with his work performance. The question for the Court at this phase of the proceedings is whether the relationship between the frequency of the comments and actions and their severity creates a genuine issue of material fact precluding summary judgment. See *Dediol*, 655 F.3d at 441. Considering the evidence in the record, it cannot be said that they do. Accordingly, Vallee's hostile work environment claims under the ADEA must be dismissed.

## D.    Vallee's Motion for Partial Summary Judgment

In its answer to the complaint, Gerry Lane requests attorney's fees and costs on the grounds that Vallee's claims are "frivolous, vexatious, and without foundation." See Doc. 3, *Affirmative Defenses*, ¶ 7.) In support of his motion, Vallee argues there is no genuine issue of material fact as to whether Gerry Lane is entitled to attorney's fees and costs because Gerry Lane has not produced any evidence to support this contention. Thus, Gerry Lane's request should be denied. Gerry Lane opposes Vallee's Motion for Partial Summary Judgment and argues that the issue of attorney's fees should not be considered by the Court at this stage of the litigation. Thus, Vallee's motion should be denied as premature.

The Court notes that the ADEA, Title VII, and Rule 54 each allow for the

25

recovery of attorneys' fees and/or costs under specific circumstances.[11]   However, each of these provisions make the recovery of attorneys' fees and costs possible *depending* on the outcome of the instant litigation.   At this stage of the litigation, the Court is unable to determine whether Gerry Lane is entitled to attorney's fees and costs at this time.   Accordingly, Vallee's motion is denied as premature.

IV.   **Conclusion**

   **IT IS ORDERED** that **Defendant's Motion for Summary Judgment (Doc. 14)** is **GRANTED**.

   **IT IS FURTHER ORDERED** that Plaintiff John R. Vallee, Jr.'s claims are hereby **DISMISSED**.

   **IT IS FURTHER ORDERED** that **Plaintiff John R. Vallee, Jr.'s Motion for Partial Summary Judgment (Doc. 15)** is **DENIED**.

Baton Rouge, Louisiana, this 28th day of March 2013.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[11]For example, 42 U.S.C. 2000e-5(k) provides that, "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."  Further, Rule 54 provides in pertinent part that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."  A motion under Rule 54 must be brought "not later than 14 days after the entry of judgment."  Fed. R. Civ. P. 54(d)(2)(B).